JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
LAWRENCE IRWIN, et al.,

## DEFENDANTS
THE DEPARTMENT OF ENERGY, et al.,

**(b)** County of Residence of First Listed Plaintiff  BLOUNT
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  District of Columbia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
The Egli Law Firm, Russ Egli, 11109 Lake Ridge Drive, FL3, Knoxville, TN 37934

Attorneys *(If Known)*
Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☒ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | **PERSONAL INJURY** ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 710 Fair Labor Standards Act | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 720 Labor/Management Relations | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 751 Family and Medical Leave Act | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 790 Other Labor Litigation | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☐ 791 Employee Retirement Income Security Act | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42 USC 183, 1081, 1985 and 1986
Brief description of cause:
Retaliation and failure to correct the same 42 USC 1981

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
10,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
03/14/24

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Tennessee ▾

| | |
|---|---|
| Irwin, et al., ) | |
| ) | |
| ) | |
| ) | |
| _____ ) | |
| *Plaintiff(s)* ) | |
| v. ) | Civil Action No. 3:23-cv-451 |
| The Department of Energy, et al., ) | |
| ) | |
| ) | |
| _____ ) | |
| *Defendant(s)* ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  The Department of Energy
National Nuclear Security Administration
C/O Jonathan Cloke
1000 Independence Way Ave., S.W.
Washington, DC

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

The Egli Law Firm, C/O Russ Egli, 11109 Lake Ridge Drive, FL3, Knoxville, Tennessee 37934.

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

Civil Action No. 3:23-cv-451

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00__ .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                        *Server's signature*

                                          _____
                                                        *Printed name and title*

                                          _____
                                                        *Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT

for the

Eastern District of Tennessee ▼

| | |
|---|---|
| Irwin, et al., | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. 3:23-cv-451 |
| The Department of Energy, et al., | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Equal Employment Office of the NNSA/OST
C/O Jennifer Granholm, Secretary of Energy
1000 Independence Ave., S.W.
Washington, DC 20585

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

The Egli Law Firm, C/O Russ Egli, 11109 Lake Ridge Drive, FL3, Knoxville, Tennessee 37934.

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

Civil Action No. 3:23-cv-451

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                        *Server's signature*

                                                        _____
                                                        *Printed name and title*


                                                        _____
                                                        *Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT

for the

Eastern District of Tennessee  ▼

| | |
|---|---|
| Irwin, et al., | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| The Department of Energy, et al., | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No. 3:23-cv-451

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Ofice of Secure Transportation
C/O Jennifer Granholm, Secretary of Energy
1000 Independence Ave., S.W.
Washington, DC 20585

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

The Egli Law Firm, C/O Russ Egli, 11109 Lake Ridge Drive, FL3, Knoxville, Tennessee 37934.

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

Civil Action No. 3:23-cv-451

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT

for the

Eastern District of Tennessee ▾

| | |
|---|---|
| Irwin, et al., | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. 3:23-cv-451 |
| The Department of Energy, et al., | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  The Department of Energy
National Nuclear Security Administration
C/O The Hon. Secretary Jennifer Granholm
1000 Independence Way Ave., S.W.
Washington, DC

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

The Egli Law Firm, C/O Russ Egli, 11109 Lake Ridge Drive, FL3, Knoxville, Tennessee 37934.

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____     _____

*Signature of Clerk or Deputy Clerk*

Civil Action No. 3:23-cv-451

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

    ❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

    ❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

    ❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

    ❏ I returned the summons unexecuted because _____ ; or

    ❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

                                           _____
                                                   *Server's signature*

                                           _____
                                                *Printed name and title*


                                           _____
                                                   *Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT

for the

Eastern District of Tennessee ▼

| | |
|---|---|
| Irwin, et al., | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | )     Civil Action No. 3:23-cv-451 |
| The Department of Energy, et al., | ) |
| | ) |
| | ) |
| | ) |
| _Defendant(s)_ | ) |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_ Jonathan Cloke
623 Daylight Drive
Maryville, TN 37801

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

The Egli Law Firm, C/O Russ Egli, 11109 Lake Ridge Drive, FL3, Knoxville, Tennessee 37934.

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____          _____
_Signature of Clerk or Deputy Clerk_

Civil Action No. 3:23-cv-451

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _0.00_ .


I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                         *Server's signature*

                                                         _____
                                                         *Printed name and title*

                                                         _____
                                                         *Server's address*

Additional information regarding attempted service, etc:

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN SECTION OF TENNESSEE**

LAWRENCE IRWIN, SHELLY IRWIN,
B. IRWIN, A. IRWIN, and C. IRWIN,
as well as other similarly situated individuals,

      Plaintiffs,

v.                                                                          Civil Action No.:_____
                                                                             *JURY DEMANDED.*

DEPARTMENT OF ENERGY/NATIONAL
NUCLEAR SAFETY ADMINISTRATION, THE
OFFICE OF SECURE TRANSPORTATION, THE
EQUAL EMPLOYMENT OFFICE,
JONATHAN CLOKE, in both his official and
individual capacities and other Defendants and/or
Co-conspirators not yet known,

      Defendants.

## <u>COMPLAINT</u>

        Comes the Plaintiff, by and through under-signed counsel. And would state unto this

Honorable Court the foregoing in support of his claim for injunctive relief and damages set forth

herein.

## <u>PARTIES</u>

        1.      Plaintiff, Lawrence Irwin, is a resident of Blount, County, Tennessee.

        2.      Plaintiff Shelly Irwin, is the wife of Mr. Irwin and is a resident of Blount County,

Tennessee.

        3.      B , A and C Irwin are the children of the Plaintiffs, Lawrence and Shelly Irwin,

and are all residents of Blount County, Tennessee.

        4.      Defendant, Department of Energy, has its main office located in Washington,

D.C.

5.      The National Nuclear Safety Administration (hereinafter, "NNSA") has its main office located in Washington, D.C.

6.      The Office of Secure Transportation, (hereinafter, "OST"), has its main office located in the Department of Energy, however it has three grand divisions in which it operates through the Country the Easter, Central and Western Regions.

7.      The Equal Employment Office, a division of the United States Department of Labor and its office for purposes of this lawsuit are located in Albuquerque, N.M.

8.      Jonathan Cloke is the direct supervisor of the Plaintiff and is believed to now reside in Blount County, Tennessee.

9.      Alycia Park is the human resources director for the Plaintiff and is believed to now reside in Blount County, Tennessee.

## JURISDICTION AND VENUE

10.     This Honorable Court is the proper venue and has jurisdiction over this lawsuit as it contains federal subject matter which conveys sole jurisdiction to this Honorable Court. 42 U.S.C. § 1331.

11.     Likewise, venue is proper before this Honorable Court has the Plaintiff and two of the Defendants herein are located in the jurisdiction of this Honorable Court. 28 U.S.C. § 1391(e).

## FACTS GIVING RISE TO CAUSE OF ACTION

12.     Plaintiff served in the United States Military, thereafter, a law enforcement officer and finally began work for the NNSA/OST, where he works to date.  Plaintiff has excelled in his career with OST as a Federal Agent, Special Response Force Member, Vehicle Lead, and currently a Training Specialist holding many instructor responsibilities. During his employment

he has received high yearly evaluations, awards, accommodations, and several recognitions for the training he develops for Agent Operations. At all times relevant herein the Plaintiff was acting within a protected process, as well as seeking to exercise his First Amendment Rights. In addition, Plaintiff L. Irwin is over the age of 40 years old.

13.     Plaintiff's career is beyond reproach and is nothing short of exceptional and patriotic until the unlawful acts complained of herein. Employment Record.

14.     Plaintiff L. Irwin's position with the NNSA/OST tasks him with the duties to train the security personnel who transport the nuclear arsenal of The United States to their final destinations throughout the Country. This responsibility of both the Plaintiff and those who he trains cannot be ascertained in words but the shear gravity of the importance of protecting our nuclear arsenal should be obvious.

15.     Plaintiff L. Irwin joined the Office of Secure Transportation in 2008 and is based to do his duties with OST's Eastern Region.

16.     At that time, the Plaintiff L. Irwin was aware of no real issues with the directors and the overall morale of his fellow colleagues was positive.

17.     Over Plaintiff L. Irwin's continuing tenure with OST, Director Mr. William "Bill" Simpson, who was troubled with various work-based complaints, retired in January 2023 and OST placed Defendant Jonathan Cloke as Acting Director.

18.     Part of Mr. Cloke's supervisory authority is over the Eastern Division of OST in which the Plaintiff L. Irwin trains OST personnel.

19.     Mr. Cloke is and has been, since former Director Mr. Simpson's retirement, the Plaintiffs direct supervisor, i.e. Plaintiff had to report to Mr. Cloke and does to date despite the unlawful conduct set forth herein.

20.     Plaintiff L. Irwin experienced violent behavior from Mr. Cloke in a closed-door meeting. Mr. Cloke generally treated fellow employees with disrespect and ran the division in a manner that is unbecoming of a federal employee in charge of federal agents over the age of 40 years who protect this Country's nuclear assets with their lives. The treatment of Plaintiff Irwin's colleagues over 40 years of age like himself was disparate with how much younger federal employees in the same division were being treated.

21.     Specifically, on April 12, 2022, while in a closed-door meeting with other OST personnel, colleagues of the Plaintiff, the Plaintiff addressed an item of discussion in the meeting. When the Plaintiff made a statement of concern to the topic of conversation, Mr. Cloke lashed out at him with vitriol and stated, "I don't give a fuck about more work, that is your fucking job and that is what you're going to fucking do, you are a god damn 1712 and that is your fucking job!" Mr. Irwin responded, "really?", Mr. Cloke, "that's your fucking job god damn it!" Despite the unlawful conduct by Defendant Cloke, Plaintiff L. Irwin replied, "yes sir." Later that same day, Mr. Cloke went to Plaintiff's office and instead of apologizing for his unlawful conduct, told Plaintiff L. Irwin that he did not appreciate calling him out in front of his peers. Defendant Cloke blamed Plaintiff for unprofessionalism, and intimidating tactics, which was false.

22.     There were several witnesses to this unprofessional attack upon the Plaintiff that range from Deputy Director of Operations, Squad Commanders, and Training Specialist. They support the Plaintiff's claims for relief herein as they have seen similar unprofessional conduct from Mr. Cloke many times and continuing in nature as nothing has been done by those in power that have the power to stop this unlawful conduct.

23.     This incident was reported on April 14, 2022. Plaintiff L. Irwin wrote an informal

grievance to Former Director William Simpson attempting to handle at lowest level and requested Director obtain statements from all present. After receiving statements Mr. Simpson met with Plaintiff L. Irwin and shockingly blamed him for Mr. Clokes behavior. Plaintiff found out weeks later that Director Mr. Simpson did not fulfill the Informal Grievance request requesting statements from everyone present.

24.    Since that date Plaintiff L. Irwin has worked in fear of retaliation and being targeted by Defendant Cloke for filing a complaint. Plaintiff has dealt with unwarranted criticism, sarcasm, excluded from normal work input and being talked about in a negative manner to other supervisors.

25.    ADA Vincent Fisher received multiple complaints from Federal Agents regarding the unlawful workplace environment at Eastern Command.

26.    In October of 2022, ADA Vincent Fisher sent Director Safety and Security Division Jeff Beck (hereinafter, "SSD") who is an OST Internal Affairs Officer and Program Manger Marlene Griego to conduct a fact-finding investigation into allegations of harassment and hostile working environment at OST Agent Operations Eastern Command. Plaintiff L. Irwin volunteered to be interviewed and gave a written statement in email prior to interview. Plaintiff L. Irwin feared retaliation if Defendant Cloke was made aware. Plaintiff L. Irwin's fears were valid as Defendant Cloke was made aware by Facility Security Officer Carlos Montanez who was the confidential point contact for Mr. Beck and Defendant Cloke did questioned Plaintiff before his interview if he had spoken with Mr. Beck.

27.    On November 7, 2022, Plaintiff L. Irwin interviewed with Mr. Beck and Marlene Griego stating that Defendant Cloke is a bully, intimidates employees, and fears Defendant

Cloke is aware of the interview, and as a result will target and retaliate against him. From that date OST was informed again that Plaintiff is in a hostile work environment and feared being targeted by Mr. Cloke.

28.     January 2023 Director William Simpson after I.A. Investigation announced retirement and assigned Training Manager Johnathan Cloke as Acting Director for Eastern Command. OST approved this decision disregarding any information from internal investigation regarding Hostile/Harassment Work Environment where Federal Employees voiced concern of Mr. Clokes continual behavior towards employees.

29.     Thereafter, on February 01, 2023, Mr. Jeff Beck, SSD appointed Mr. Mark Rodriguez, Security Specialist, the Inquiry Official (hereinafter "IO") for a potential security incident which occurred at the live firing range reported to Mr. Beck by Plaintiff.

30.     The incident in question concerned the Plaintiff, Training Specialist, and two weapons that were not secured after live fire training in accordance with DOE Order requirements.

31.     According to statement written by Mr. Timothy Fowler, Range Master at the Central Training Facility (hereinafter, "CTF"), "On 18 Jan 2023 OST was training in the Live Fire Shoot House (hereinafter "LFSH") at the CTF and finished around 1500." "On the same day at approximately 1600 the FBI was training in the LFSH. Mr. Fowler related he received a message from FBI Agent Bill Leckrone to call him around 1800, when Mr. Fowler called Mr. Leckrone said a rifle and handgun was left at the LFSH that was not theirs."

32.     Plaintiff notified Acting Supervisor Mr. Alan Quartararo of the Incident of Security Concern on January 18, 2023. Mr. Quartararo made notification to Mr. Cloke and to

Facility Security Officer Carlos Montanez, which they were to make notification to Security Branch.

33.    Mr. Quartararo was told to do Douglas Factors against Plaintiff by Mr. Cloke

34.    Mr. Cloke informed Mr. Quartararo he notified Employee Relations (hereinafter "ER") Alycia Park.

35.    Mr. Quartararo received "friction" from ER Alycia Park and was informed by her that it would be a waste of everyone's time if he did not change his penalty to something greater and it would be rejected by Deciding Official Mr. Cloke.

36.    Mr. Quartararo was further threatened that if he did not change his penalty when resubmitted to ER that he would be recommended to be removed as Proposing Official.

37.    Mr. Quartararo was removed as Proposing Official and replaced by Mr. Cloke.

38.    Mr. Cloke questioned Plaintiff via email and only Plaintiff, no other employee received questions from Mr. Cloke which directly targeted Plaintiff by Mr. Cloke and placed Plaintiff in fear.

39.    Plaintiff did not commit the violation; however, he is the one that called it in so the incident could be investigated, and proper remedial action could be taken.

40.    However, CTF did not use the LFSH that day, so thereafter Mr. Fowler called the Plaintiff and inquired if the weapons belonged to OST.

41.    The Plaintiff advised that he would return to the CTF to ascertain who the weapons had belonged to.

42.    Thereafter, Mr. Fowler telephoned Mr. Leckrone and informed him that the Plaintiff was on his way to the CTF.

43. When the Plaintiff arrived at the CTF gate, he was met by Mr. Leckrone who delivered the unsecured weapons at approximately 1844. The Plaintiff confirmed to Mr. Fowler at approximately 1844, that he was in control of the weapons.

44. In a statement by Plaintiff to Acting Training Manager Alan Quartararo it was reported:

> on 18 Jan 2023, training was complete at the Live Fire Shoot House around 1630. Mr. Irwin completed lock up procedures with the Range Master leaving CTF around 1700. Mr. Irwin related he completed ammunition turn-in at the ATRF ARMAG, completed paperwork, secured facility, and left AOEC at 1800 hours. Mr. Irwin related he was notified by Range Master from CTF (Mr. Fowler) moments after leaving AOEC that a rifle and pistol was left on the weapons rack at the shoot house. Mr. Irwin related he returned within minutes, retrieved the firearms, and secured the weapons in the RON safe at AOEC. During the process he notified Acting Training Manager Alan Quartararo of the situation.

45. Thereafter, Mr. Brad A. Jenkins, Armorer for AOEC related in a statement on the morning of the 18 Jan 2023:

> Mr. Dan Rouse, Armorer for AOEC, began issuing the weapons to Agents for SRFB. Mr. Rouse had issued several of the weapons including Instructor Irwin's (M4 ; M&P Pistol, Rank ID: R-5). An Agent (later identified as Federal Agent Hewitt) had taken custody of Instructor Irwin's gun to take to the training.

46. Mr. Jenkins later related in statement:

> …he assisted Mr. Rouse in issuing the rest of the weapons. Mr. Rouse had created a hand receipt, the day prior, (17 Jan 2023) (later identified as being issued to Federal Agent Bledsoe) for the weapons going out, and intended to continue its use for the 18 Jan 2023, as well. Mr. Roger Werthmann, ITP armory supervisor, further advised that he had received an email from Instructor Irwin stating that he did not need the shotguns or Instructor Breslin's guns, as issued the day prior.

47. Mr. Jenkins also stated that:

> …he was the armorer who received the weapons upon the agents return on the afternoon of the 18 Jan 2023. The Agents began to return around 1630 until 1700. Mr. Jenkins related he returned the Agents weapons cards to the

respective agent as they turned in their weapons. Mr. Jenkins further related he looked at the hand receipts on the counter and only noticed the one for the shotguns that were not issued that day (18 Jan 2023). Mr. Jenkins related he did not see the hand receipt for Instructor Irwin's weapons, that was underneath the receipt for the shotguns ( that were not taken to the range per the email sent to Mr. Werthmann). Mr. Jenkins related on the evening of the 18 Jan 2023, he was contacted at home by Mr. Adam Tilley Armorer for AOEC, and Mr. Worthmann.

48.     Mr. Tilley and Worthmann advised Mr. Jenkins:

CTF personnel had found an OST M4 and pistol at their facility. They advised that Agent(s) and/or Instructor(s) had left the weapons at the CTF and had not returned them to AOEC. CTF personnel contacted Mr. Irwin and the weapons were returned and secured in the RON safe at AOEC. Mr. Daniel Rouse, ITP/ AOEC Armorer, related in a statement and interview on Wednesday the 18 Jan 2023, Mr. Brad A. Jenkins and I were issuing guns to the SRF Train-up guys. I issued the instructor guns to Agent Hewitt.

49.     In addition, Mr. G. Bledsoe, Federal Agent AOEC, stated:

 On Tuesday, 17 Jan 2023, I Agent Bledsoe arrived at AOEC at approximately 0630 for SRF Spin up training.  I signed for my rifle and pistol, as well as signed for two instructor rifles, two instructor pistols and three shot guns.  While signing I was advised by Mr. Rouse that the hand receipt form that I signed would be used for the whole week of training.  I stated I would be gone for two days on mission but would be back Friday and had no issues with that.  I completed the day of training.  At the end of the day, I turned in my rifle and pistol, plus the two instructor rifles and pistols, and three shot guns Mr. Rouse.  All of the firearms I signed for where present and accounted for at the time of turn in.  Mr. Bledsoe continued saying, On Wednesday, 18 Jan 2023 I reported to AOEC at 0730 for Mission to SRO, I left AOEC without signing for any weapons due to none needed on the mission.  On Thursday, 19 Jan 2023, I returned from the mission. Friday, 20 Jan 2023, I arrived at AOEC at 0730 for SRF spin up training. I retrieved only my issued rifle, and pistol by turning in my weapons cards. Turning in both weapons at the end of the day.

50.     Mr. Colton Hewitt, Federal Agent AOEC, stated in a phone interview:

…he does not recall signing for Mr. Irwin's weapons on the 18 Jan 2023 he does recall signing for a "couple of shotguns" but was unsure of the date. According to an email statement written by Mr. Carlos A. Montanez, AOEC DDF, sent to Mr. Beck; "On 01/18/23, I received notification that Lawrence Irwin failed to account for sensitive items (rifle and handgun).  Initial personnel inquiry identified that on 01/18/23 at approximately 1715 hrs.,

Irwin left his assigned rifle and handgun at the Combined Training Facility (CTF) which was discovered by other government agency (OGA) on 01/18/23, between the hours of 1700-1800 hrs. Further inquiry revealed that the time frame might have been between 1500 -1800 hrs. During the inquiry, it was revealed that sensitive items sign out and turn in procedures by AOEC Armor personnel were not followed, furthermore, inadequate practices were also discovered. These failures in procedures and inadequate practices prompted an immediate action by AOEC, in the process several corrective actions were identified and implemented.

51.     The previous sign-out and turn-in procedures where, as follows:

1. Armor personnel would issue weapons to instructor staff using a hand receipt, if training duration consisted of multiple days, personnel were authorized to maintain a rolling hand receipt.
2. Armor personnel would allow other personnel to take custody of the issued weapons outside of the person identified in the hand receipt.
3. Only FAs are issued a weapons card 4. It was apparent that 100% accountability did not take place during afterhours training event, this was evident due to Irwin's weapons not being accounted for by armorer personnel.

Recommended courses of action:

1. All Federal and Contractor personnel will be issued a weapons card that will reflect assigned weapon. (This process facilitates accountability)
2. All Federal and Contractor personnel will physically sign out their respective assigned weapons, sensitive items, etc. using their respective weapons card or hand receipt.
3. The use of hand receipts will not be authorized to be rolled over, a new hand receipt will be produced to reflect current date, time, and name of personnel.
4. An end of business day or after-hours an email notification will be made to the AOEC duty officer and DDF with a notification of 100% sensitive items accountability. (This process is being reviewed by Contracting Officer Melvin Ward)
5. Additionally, Items left overnight in the RON safes would be reported to the on-call duty officer (Federal or Contractors) as accounted for and secured. Armory personnel would account for those items the next business day, if any discrepancies are identified, they would follow
reporting requirements.

AOEC – Armor Personnel.

52. As further evidence was presented from the investigation, it was determined that the Plaintiff's weapons were improperly stored. As acting DDF, I take full responsibility for the failure to report the incident in a timely manner."

53. The Inquiry Officer then conducted a phone interview on April 12, 2023 with the Plaintiff.

54. During the phone interview, the Plaintiff stated:

> …on January 18, 2023 training was completed at 1600 and the range clean up and AAR was conducted between 1610 and 1615 the agents departed OOA 1620. Mr. Irwin related that he proceeded to close and lock up the range and departed CTF at 1646. He was notified at approximately 1813 by Mr. Fowler that the FBI occupied the range after OST and found a rifle and handgun. Mr. Irwin related that at 1814 he notified his supervisor Mr. Alan Quartararo, Training Manager for AOEC that an OST weapon had been left at the range and he (Mr. Irwin) was on his way back to CTF to retrieve the weapon. Mr. Irwin related that he returned to AOEC to check out a government vehicle and then proceeded to the CTF. Mr. Irwin retrieved the weapons at approximately 1850 and secured them in the RON safe at AOEC. The Inquiry Official was unable to confirm when the safe was opened because the container's SF 702 was not retained.

## CHRONOLOGY OF EVENTS LEADING OOAA TO CONTINUING RETALIATION

55. Range training was scheduled at CTF LFSH for individuals preparing for SRF Basic at TSTS approximately March 1ST CTF LFSH training was scheduled for January 17th, 2023 through February 17th, 2023.

56. A hand receipt was created on the morning of 17 January 2023 for the weapons to be used at the CTF LFSH range. The process allowed the hand receipt to be used for multiple days for weapons that were not issued to specific individuals with an ARMF weapon card.

57. Custody of the weapons is the responsibility of the individual that signed the multi-day hand receipt. The weapons are set aside for Instructor and staff use as these individuals are not issued ARMF Weapon Cards.

58.     OST and the FBI scheduled the CTF LFSH for the same date and time. One of the CTF staff members approached Mr. Irwin and asked if OST could finish early on the 18 Jan 2023 so the FBI could use the range afterwards.

59.     According to Mr. Fowler, OST completed training at 1500 on 18 Jan 2023 and the FBI started training at 1600. He also said that he received a phone call from FBI SA Leckrone around 1800 to report a rifle and handgun was left at the LFSH. Mr. Irwin confirmed to Mr. Fowler at 1844 hours that Mr. Irwin was in control of the weapons.

60.     The AOEC armory personnel advised that OST Agents returned from the LFSH at approximately 1630 to turn in their weapons until 1700. The armory personnel did not realize that two weapons had not been turned in and assumed that their daily weapons count was accurate.

61.     Mr. Irwin stated OST training completed at 1600 and the range clean up and AAR was conducted between 1610 and 1615 the agents departed OOA at 1620. Mr. Irwin closed and locked up the range and departed CTF at 1646. He then completed ammunition turn-in at the ATRF ARMAG, completed paperwork, secured the facility, and departed for home at 1800. Mr. Irwin was notified at approximately 1813 by Mr. Fowler that the FBI had found a rifle and handgun at the LFSH. At 1814 Mr. Irwin notified his supervisor Mr. Quartararo.

62.     At 1844 Mr. Irwin confirmed to Mr. Fowler that he was in control of the weapons. Mr. Irwin returned to AOEC armory at approximately 1900 and secured the weapons in the safe at AOEC because the armory staff had gone home. Mr. Irwin confirmed his stated times by reviewing the security camera footage from CTF.

63.     The Inquiry Official requested the hand receipts for the 17th and the 18th of January 2023 and received conflicting information on their whereabouts. The Armory staff

recalls giving the hand receipts to Mr. Werthmann. Mr. Werthmann in a statement recalls that a hand receipt was created for Mr. Irwin's weapon signed by Mr. Colton Hewitt.

64.    This cannot be confirmed, however, because the hand receipt is missing. Mr. Werthmann stated that the armory staff last saw the hand receipt on his desk and Mr. Werthmann remembered taking the hand receipt to either Mr. Montanez or Mr. Cloke's office. Mr. Montanez subsequently stated he did not have the hand receipts.

65.    A question remains, was there two hand receipts, one for the range day on the 17 Jan 2023 allegedly signed for by Mr. Garret Bledsoe, and one for the 18 Jan 2023 allegedly signed by Mr. Hewitt Colton or was there only one that was used multiple days that was created on the 17 Jan 2023 and allegedly signed for by Mr. Garrett Bledsoe, FA AOEC, who only attended SRF training on the 17 Jan 2023 and then was on mission starting on the 18 Jan 2023, as originally reported.

66.    This added to the confusion for the armory to account for all weapons at the end of the day.

## FAILURES OF THE AMORY'S PROTOCOL

67.    The armory system for issuing weapons is based on Armory Slot Cards. These slot cards identify the temporary location of weapons.

68.    There are several different types of cards; ARMF-008 Weapon Card (color is changed annually), ARMF-019 Weapon Test Fire Card (Blue in color) and ARMF-020 Weapon maintenance Card (Grey in color), ARMF-021 Weapon Pre-Staged Card (green in color), ARMF-022 Deployed Weapon Card (Tan in color) and finally ARMF-023 Damaged Weapon Card (Red in color).

ARMF-008 Weapon Card is the official exchange card used in place of the OST 6601.03

Equipment Issue/ Receipt (Hand Receipt).

69.     The weapon card will list all of the sensitive and high-risk items attached to the weapon and their serial numbers. Multiple weapon cards can be created by Armorers for use by anyone issued weapons or accessories.

70.     The ITP-OST Business Process, Conduct Daily Weapons Count, Document number ARMP-008 Rev 00 list the specifics of what each ARMF card is used for and its purpose.

71.     Weapons not assigned to specific individuals, and the equipment attached to the weapon will be issued on an OST F 6601.03 (hand receipt). This document is also used for any sensitive and high-risk items issued from property.

72.     The form stipulates under the terms and conditions. The above property shall not be modified, loaned, or transferred to a second party. So, anyone signing for property on a hand receipt cannot do so for another individual, and it is the responsibility of the signor to ensure the property is returned to property at the end of its use.

73.     Several issues added to these weapons being missed placed. Although the weapon card system and the OST F 6601.03 (Hand Receipt) complies with the DOE Order requirements and OST Property Management System. The Armorer who was checking in the weapons on 18 January 2023 missed a hand receipt that accounted for the weapons checked out as extras for the instructors (M4 Rifle; M&P Pistol, Rank ID: R-5).

74.     If the daily weapon count was done as prescribed the weapons would have been noticed as not being there and upon a second count the hand receipt would have been found. If the hand receipt was not located after the second count it is logical to assume the OIC, Mr. Irwin would have been contacted to inquire if he was in possession of the weapons.

75.     The hand receipts for the 17th and 18th of January, a crucial piece of evidence to determine who was responsible for the weapons in question, cannot be located. According to DOE O 243.1C Record Management and OST file plan the OST F 6601.03 period of retention is two years.

## DUTIES, RESPONSIBILITIES AND REQUIREMENTS

76.     DOE Requirements. DOE O 473.2A, Appendix A, Chapter IV:

f. Inventory.

(1) All individually assigned firearms must be inventoried by a number count at the beginning of each shift or mission segment. Those firearms checked out for use may be inventoried by a record that identifies the responsible party.

g. Storage.

(1) Firearms must be stored in a vault-type room with an intrusion detection system with an alarm response capability so that unauthorized removal is unlikely.
(2) When firearms are not in storage as above, they must be stored in accordance with an approved SP signed by the ODFSA.
(3) All offsite storage must be approved by the ODFSA.

77.     1. Regarding OIC for the range, Mr. Irwin was the OIC/RSO for the range day in question and for the follow on SRF train up range days. The OST SOP 3.00.10D, Live-Fire Range Operations, 2. Scope, this procedure applies to all OST Federal and contractor employees who conduct or participate in live-fire or explosive training activities. Section 3.10. Firearms Safety Rules and Briefings; The OIC or designee will brief participants on the rules, controls, and information that are applicable to the range activity. And finally, section 3.10.3.8, Firearms will not be left unattended or unsecured.

78.     These responsibilities are for all agents, staff, instructors, and participants of the range training.

Weapon Custodian. The individual who signs for weapons on OST F OST F 6601.03 (hand receipt) shall abide to the Terms and Conditions:

1. The employee taking possession of government property shall:

a. Return the equipment in like condition as received, normal wear and tear excepted.
b. In case of loss or damage of the property, the employee will initiate a Report of Survey and may be required to reimburse the Department of Energy if found liable for the loss/damage.

2. The above property shall NOT be modified, loaned, or transferred to a second party.

3. The employee taking possession of the property shall safeguard and account for the property and permit inspection by the Logistics Property Management Branch property management personnel upon request.

4. The employee shall manage the property in accordance with current property management procedures, as specified in the OST M 8.07C, Personal Property Management Program.

5. The property belongs to the United States Government. Title to the property is vested in and will remain with the United States Government and the property shall be used for Official Use Only.

6. By signing below, the employee acknowledges and agrees to the terms and conditions listed above.

79. It is the responsibility of the individual who signed the hand receipt for weapons, or any other sensitive and high-risk items issued from property to safeguard and account for the property.

80. As to the Armory. The armory is responsible for ensuring that all weapons assigned are returned and accounted for. In accordance with ITP-OST business Process, ARMP-008_00 Conduct Daily Weapons Count, 2.0 Verify Count, Verification will be made by confirming the number of weapons checked out and the number present in the armory. If the weapons count is correct, the Armorer will complete ARMF-007 Daily count and Status Report form. If all weapons are not accounted for, the Armorer will inform the Senior Armorer and

perform a recount. If the recount does not account for all weapons the armorer will contact the Senior Armorer and/or Federal.

81.     As to Oversight.  The Senior Armorer is responsible for an accurate count of the weapons at the end of the day.

## INQUIRY OFFICIAL OBSERVATIONS AND RECOMMENDATIONS

82.     During the inquiry it was determined that sufficient evidence/facts existed that an IOSC did occur.

DOE O 473.2A, Appendix A, Chapter IV g. Storage requires the following:

(1) Firearms must be stored in a vault-type room with an intrusion detection system with an alarm response capability so that unauthorized removal is unlikely.
(2) When firearms are not in storage as above, they must be stored in accordance with an approved SP signed by the ODFSA.
(3) All offsite storage must be approved by the ODFSA.

83.     Due to the incident not being reported in a timely manner in accordance with OST M 6.06, Incident of Security Concern Program Plan, several key documents were not retained (hand receipts for the 17 and 18 Jan 2023 and the SF 702 for the RON safe). Furthermore, the memory of key individuals had faded making it difficult for the Inquiry Official to ascertain an accurate timeline of events.

84.     During the time frame of the incident Armory personnel would issue weapons to instructor staff using a hand receipt, if training duration consisted of multiple days, personnel were authorized to maintain a rolling hand receipt. Armory personnel would allow other personnel to take custody of the issued weapons outside of the person identified in the hand receipt. Only FAs are issued a weapons card, instructors are allowed to use the spare weapons, which are signed out on hand receipts.

85.     The armorer did not account for all weapons when performing end of day close out procedure.

86.     The individual who signs for weapons on OST F 6601.03 (hand receipt) shall abide to the Terms and Conditions, namely the employee taking possession of the property shall safeguard and account for the property. The property shall NOT be modified, loaned, or transferred to a second party.

87.     This means the individual who signed for the property in essence is responsible for the property.  The weapons in question were spare weapons not Mr. Irwin's weapons and are the responsibility of the individual who signed for them.

88.     Mr. Irwin was the OIC/RSO for the range day in question. The OST SOP 3.00.10D, Live-Fire Range Operations, 2. Scope, states: This procedure applies to all Office of Secure Transportation (OST) Federal and contractor employees who conduct or participate in live-fire or explosive training activities. Within this SOP, Section 4. Responsibilities, (OIC) Section 3.10. Firearms Safety Rules and Briefings; The OIC or designee will brief participants on the rules, controls, and information that are applicable to the range activity. And finally, section 3.10.3.8. Firearms will not be left unattended or unsecured.

89.     These responsibilities are for all agents, staff, instructors, and participants of the range training.

90.      Mr. Irwin was the OIC for the range day in question, he closed out and left the range at 1646.  Mr. Irwin completed ammunition turn-in at the ATRF ARMAG, completed paperwork, secured facility, and left at 1800 on his way home.  The Inquiry Official could not determine when the FBI took possession of the range, but because the FBI did not occupy the range until after OST had vacated it is highly unlikely the FBI

didn't notify Mr. Fowler until 1800. At approximately 1813 Mr. Fowler advised Mr. Irwin the FBI found two OST weapons at the LFSH. At 1814 Mr. Irwin informed his supervisor, Mr. Quartararo, of the found weapons. At 1844 Mr. Irwin confirmed to Mr. Fowler that he was in control of the weapons. At approximately 1900 Mr. Irwin secured the weapons in the AOEC safe, because the armory staff had gone home. Mr. Irwin confirmed his stated times by reviewing the security camera footage from CTF. It is the opinion of the Inquiry Official that Mr. Irwin had integrity by notifying his supervisor of the events that took place, and responded correctly when he was informed of the weapon left on the range. He did not try and conceal the events that took place.

91.     Indeed, all the checks and balances that were supposed to account for the weapons failed. The individual who signed for the weapons did not verify the weapons were secured in a vehicle at the end of range training.

92.     All range personnel attending the range failed to notice the weapons still on the rack while cleaning up the range and during AAR.

93.     The hand receipts for issued weapons normally verified by armory staff when the agents returned from the range did not occur.

94.     The armory staff did not account for the two missing weapons while performing end of the day weapon inventories.

95.     The IOSC was not reported until the ODFSA received a call from the accused.

96.     The ODFSA contacted the Command to determine if an IOSC had occurred. The AOCs are not authorized to conduct their own Inquires, they are required to report possible IOSC to the Security Branch and an ADA appointed Inquiry Official will conduct an inquiry. The

Inquiry Official will provide any DOE/OST requirements that were violated and recommendations to ensure this type of incident does not occur in the future.

97.     As averred herein, the hand receipts for the 17th and 18th of January 2023, a crucial piece of evidence to determine who was responsible for the weapons in question, cannot be located. The Inquiry Official could not determine who actually signed for the weapons in question.

98.     The signer for the weapons is ultimately responsible for returning the weapons. The Inquiry Official after reviewing all the facts recommends the changes put in place by AOEC previously mentioned by Mr. Montanez will correct this problem and should ensure this type of incident does not occur in the future.  Unfortunately, the investigation was never conducted properly and the Plaintiff was disciplined for no other reason than to retaliate against him for reporting Mr. Cloke and to chill his Freedom of Speech.

99.     In March of 2023, the Plaintiff sought both informal and formal mediation through numerous written grievances as to the unlawful disciplinary charge set forth above from Brian Scarbrough, Vincent Fisher and even Dr. Marvin, all of whom failed to respond at all to the Plaintiffs request.  To date no response has been received.

100.    Having not heard from any of the upper supervisory officials named above, the Plaintiff sought assistance by the Office of Special Counsel on or about April 1, 2023, as a result of the due process violations of the investigation and the fear that he was being retaliated against for conducting himself in a protected process to report workplace harassment by Mr. Cloke.

101.    Having not received certain reports from supervisory and investigative officials concerning the armory incident that should have been previously provided to the Plaintiff, the OSC advised it could not move forward on the Plaintiffs complaints.

102.     During this same time frame, the undersigned was working with the FOIA Office in Albuquerque, N.M. for certain reports, emails from Mr. Cloke, and Ms. Park, etc. The direct contact was Mrs. Lora Bright. No initiating letter was ever received concerning the FOIA request nor any initial objections were made to the Plaintiffs request. As a result the Plaintiff was forced to file a lawsuit with this Honorable Court to compel the production of those materials which are relevant to this lawsuit. See 3:23-cv-451.

103.     The Plaintiff has still not received one document from his FOIA request. The FOIA litigation remains pending in this Honorable Court and no answer has been filed by the United States.

104.     The Plaintiff has recently discovered that Defendant Alycia Park moved to Blount County, Tennessee as has John Cloke. As mentioned herein, the Plaintiff confided in Ms. Park as the human resources director over his division and had to as required by standard operating procedures.

105.     Upon information and belief, Ms. Park conspired with Mr. Cloke when the Plaintiff raised concerns over his workplace violence prior to the charade the Plaintiff was placed through concerning the armory incident.

106.     In support of this conspiracy, the Plaintiff has discovered that Mr. Cloke and Ms. Park are involved in an intimate relationship during all relevant times herein to which he only discovered this past summer. Upon information and belief, Ms. Park has unlawfully passed on this confidential information concerning the Plaintiffs complaints on to John Cloke to allow him to retaliate against the Plaintiff for exercising a protected right.

107. In October of 2023, the Plaintiff was provided evidence that Mr. Rodriquez was instructed to make changes to the Incident of Security Concern Report which is marked as Narrative 23-003 (updated by committee not IO).

108. This matter was reported to EEO through pre-suit investigation. The EEO, having knowledge of Plaintiffs first complaint about Mr. Cloke's violent behavior at the workplace to which the EEO did nothing about allowing Mr. Cloke to continue his harassment and leaving the Plaintiff working in fear which is ongoing to date.

109. Mr. Cloke remains the Plaintiff's supervisor to date.

110. The Plaintiff has suffered damages by way of lost wages and mental and emotional anguish for the unlawful treatment which has been placed upon him by the Defendants whose job it is to protect their employees, not harm them.

111. The Plaintiff asserts this conduct to be outrageous and is in complete fear to raise any concerns at work concerning workplace harassment and or retaliation for fear of further retribution by the Defendants. There are other employees that have been placed through this unlawful treatment by Mr. Cloke and concerns mentioned during the hostile work environment investigation. As a direct result of the Defendants unlawful conduct herein the Plaintiff suffers from the following:

      a.    Sleepless nights;

      b.    Fear of going to work due to further retaliation and targeting by Mr. Cloke.

      c.    Anxiety that Mr. Cloke will take more adverse action against him since the EEO nor anyone else such as Vincent Fisher or Dr. Marvin have done anything to stop this unlawful conduct.

d.    Extreme fear and nausea resulting from believing Jonathan Cloke will take future adverse action and try to have the Plaintiff fired.

e.    Anxiety that the Plaintiff has no one to go and the belief that no one cares as a result of the numerous letters that have been sent requesting help from his peers, all of whom have not responded at all.

## COUNT I – VIOLATION OF TITLE VII

112.    The Plaintiff, Lawrence Irwin,  restates paragraphs 1-111 in support of Count I.

113.    At all relevant times hereto, the Plaintiff was engaged in the protected activity of reporting workplace harassment/retaliation and exercising his First Amendment rights.

114.    Defendants herein were on complete notice of the Plaintiffs engagement in these protected activities and have no plausible deniability.

115.    Defendants allowed Mr. Cloke to take adverse action against the Plaintiff in latter disciplinary matters set out herein, which continues to date and which all the Defendants know about but have done nothing to stop.  Both violation of the Equal Protection of the laws applies here, as well as 42 U.S.C. §§ 1983, 1985-1986.

116.    There is a direct causal link between the protected activity the Plaintiff engaged in herein and the adverse action that the Defendants and Jonathan Cloke took against the Plaintiff. In the words of Mr. Rodriquez, this should never have happened to you.

117.    As a direct result of the Defendants unlawful conduct the Plaintiff has suffered damages.

## COUNT II – 42 U.S.C. § 1983, 1985 and 1986 - FIRST AMENDMENT RETALIATION

118.    The Plaintiff restates paragraphs 1-117 in support of Count II.

119.   At all times relevant herein, the Plaintiff was reporting workplace harassment and retaliation, a constitutionally protected activity guaranteed by the First Amendment.

120.   The Defendants developed the existence of a single plan, i.e. to conspire against Plaintiff L. Irwin for engaging in a protective activity exposing workplace harassment and retaliation within the federal government, the Defendant conspirators shared in the aforementioned general conspiratorial objective to deprive Plaintiff L. Irwin of a federal right, and then committed an overt action committed in furtherance of the conspiracy by both accusing Plaintiff L. Irwin of a violation he did not commit and then later threatening Mr. Rodriguez to change a federal employee's (L. Irwin's) security report caused injuries to the Plaintiffs.  The Defendants' actions were motivated by or substantially caused by the Plaintiff's exercise of that right, i.e. reporting workplace harassment and retaliation to protect himself as well as other federal employees.

121.   Clearly, Plaintiffs actions herein were required by law and in fact protected under the law to prevent federal employees such as himself, as well as others similarly situated to be free from workplace harassment and retaliation.  The Defendants' unlawful conduct raised herein would cause a similarly situated person with ordinary firmness, like the Plaintiff, would be reasonably chilled by the governments conduct.

122.   But for the exercising of his First Amendment rights by reporting workplace harassment and retaliation the retaliation set forth herein would not have taken place. Defendants retaliation herein is the direct and dole cause of the chilling of the Plaintiff's First Amendment Rights.

123.   The Plaintiff has suffered damages as a result of the Defendants First Amendment Retaliation.

## COUNT – III INFLICTION OF EMOTIONAL DAMAGES/PUNITIVE DAMAGES

124.    The Plaintiffs restate paragraphs 1-123 in support of Count III.

125.    The Defendants conduct set forth herein is contrary to civilized law as it seeks to destroy a federal employee and his reputation for following protocols he was trained to notice and to report, i.e. workplace harassment and retaliation for acting in a protected capacity in reporting workplace violations.

126.    The Defendants conduct herein is outrageous as it seeks to abrogate Title VII enacted to protect federal employees, such as the Plaintiff and to use it as a sword and not a shield against employees like the Plaintiff who is trying to protect himself and others from workplace abuse.

127.    The Defendants' acts herein and to be discovered through the FOIA request purposely and/or recklessly, caused the Plaintiff emotional distress, Plaintiffs has sought counseling to which he sees his parishioner for these damages as a result of the unlawful conduct of the Defendants.

128.    The direct cause of this mental and emotional anguish is due to the outrageous conduct of the Defendants herein to which the Plaintiff is entitled to punitive damages.

130.    The unlawful conduct of the Defendants hereunder has caused emotional damages to Ms. Irwin as well as the parties minor children for having to see the emotional damages the conduct of the Defendants herein has caused Mr. Irwin and the efforts made to assist Mr. Irwin in navigating this unlawful treatment by the Defendants.

## COUNT IV - CONSPIRACY TO ABROGATE TITLE VII AND TO RETALIATE AGAINST  PLAINTIFF L. IRWIN FOR CONDUCTING HIMSELF IN THE

## PROTECTED ACTIVITY BY REPORTING WORKPLACE HARASSMENT AND NOW RETALIATION AS TO DEFENDANTS

131.     Plaintiff L. Irwin restates paragraphs 1-130 in support of Count IV.

132.     Defendants conspired to violate Plaintiff L. Irwin's civil rights pursuant to 42 U.S.C. § 1985 by taking overt acts to retaliate against Plaintiff L. Irwin for conducting himself in a protected activity, i.e. reporting workplace harassment and later retaliation for taking part in that protected activity which is ongoing and which has and still is causing Plaintiff L. Irwin and his family damages.

133.     As noted at all times relevant, Plaintiff L. Irwin was engaged in a protective activity, i.e. reporting work place harassment and retaliation.

134.     As a result the Defendants took an overt adverse job action against Plaintiff L. Irwin by suspending him from his job without pay for 14 days blocking his ability to appeal to the United States Merit System Protection Board. As noted herein prior to this personal attack upon him by Defendant Cloke, and other co-conspirators who are not yet known, Plaintiff L. Irwin's employment record was impeccable. In addition, as noted above, Defendant Cloke, and other yet unknown co-conspirators, conspired in yet another overt act by unlawfully modifying Investigator Rodriguez's security branch report after the fact, in violation of federal law.

135.     Defendant Cloke remains Plaintiff L. Irwin's supervisor to date despite these shocking allegations set forth herein despite his requests that working around and for Defendant Cloke causes him great emotional distress every time he has to report to work.  Plaintiff L. Irwin has asked repeatedly to have Defendant Cloke reassigned so that he is no longer his direct supervisor to no avail.

136.     Defendant's conspired to violate Plaintiff L. Irwin's due process rights both substantive and procedural when they refused to turn over all information he was entitled to

defend against the disciplinary matter regarding the Armory and continue to do so by failing to respond to Plaintiff L. Irwin's FOIA request which has also been filed with this Honorable Court.

137.     As a result of the Defendants conspiracy to violate Plaintiff L. Irwin's civil rights he and his family have suffered damages and continue to suffer damages.

**COUNT V – 42 U.S.C. § 1981, 1985 and 1986 – AGAINST ALL DEFENDANTS FOR KNOWINGLY ALLOWING AND CONSPIRING TO CONTINUE TO ALLOW THE UNLAWFUL CONDUCT WITHIN ITS RANKS ABROGATING PLAINTIFF L. IRWIN'S RIGHTS TO EQUAL PROTECTION OF THE LAWS**

138.     The Plaintiff restates paragraphs 1-137 in support of Count V.

139.     At all times relevant herein, the Plaintiff was reporting workplace harassment and retaliation, a constitutionally protected activity protected by 42 § USC 1981 by the Equal Protection of the laws of these United States.

140.     The Defendants developed the existence of a single plan, i.e. to conspire against Plaintiff L. Irwin for engaging in a protective activity exposing workplace harassment and retaliation within the federal government, the Defendant conspirators shared in the aforementioned general conspiratorial objective to deprive Plaintiff L. Irwin of a federal right, and then committed an overt action committed in furtherance of the conspiracy by both accusing Plaintiff L. Irwin of a violation he did not commit and then later threatening Mr. Rodriguez to change a federal employee's (L. Irwin's) security report caused injuries to the Plaintiffs.  The Defendants' actions were motivated by or substantially caused by the Plaintiff's exercise of that right, i.e. reporting workplace harassment and retaliation to protect himself as well as other federal employees and sought to deprive and did deprive Plaintiff L. Irwin of the Equal Protection of the laws of these United States.

141.     Clearly, Plaintiffs actions herein were required by law and in fact protected under equal protection to prevent federal employees such as himself, as well as others similarly situated to be free from workplace harassment and retaliation. The Defendants' unlawful conduct raised herein would cause a similarly situated person with ordinary firmness, like the Plaintiff, would be reasonably chilled by the governments conduct.

142.     But for the exercising of his First Amendment rights by reporting workplace harassment and retaliation the retaliation set forth herein would not have taken place. Defendants retaliation herein is the direct and dole cause of the chilling of the Plaintiff's First Amendment Rights to affect their conspiracy to abrogate Plaintiff L. Irwin's rights to Equal Protection.

143.     In fact, there are numerous other federal employee colleagues that are undergoing the same disparate treatment by the federal government and Defendant Cloke who are all over the age of 40 and all have had their equal protection of the laws abrogated by the Defendants herein. The motive is upon information and belief aged based to force out veteran NNSA/OST employees with exceptional records to bring in new younger more like-minded federal employees with the current state of affairs of this Country and hire on much lower grade pay scales.

144.     The Plaintiff has suffered damages as a result of the Defendants violation and conspiracy to violate 42 USC § 1981.

**WHEREFORE, PREMISES CONSIDERED, THE PLAINTIFF PRAYS THAT THIS HONORABLE COURT EMPANEL A JURY TO TRY THIS CAUSE, AWARD THE PLAINTIFF DAMAGES FOR THE COUNTS SET FORTH HEREIN TO BE DETERMINED BY THE JURY, FOR AN ORDER EXPUNGING THIS ENTIRE**

CONSPIRATORIAL CHARADE FROM PLAINTIFF L. IRWIN'S RECORD, AND
FINALLY FOR THE PLAINTIFFS' ATTORNEY'S FEES, COSTS, EXPENSES, LOST
WAGES AND EMOTIONAL DAMAGES, FOR INJUNCTIVE RELIEF IN THE FORM
OF REMOVING DEFENDANT CLOKE AS PLAINTIFF L. IRWIN'S DIRECT
SUPERVISOR AND FOR A BIFURCATED HEARING ON PUNITIVE DAMAGES FOR
THE OUTRAGEOUS CONDUCT OF THE DEFENDANTS HEREIN.  FINALLY THIS
ACTION IS INDICATIVE OF CONTINUING YET EVADING REVIEW DUE TO THE
FAILURES AND CONSPIRATORIAL GOALS OF THE DEFENDANTS HEREIN.

Respectfully submitted,

s/Russ Egli
Russ Egli, BPR#24408
The Egli Law Firm
Attorney for the Plaintiff
11109 Lake Ridge Drive, FL3
Knoxville, TN 37934
865-304-4125
theeglilawfirm@gmail.com