UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

LAWRENCE IRWIN, *et al.*,           )
                                     )
            Plaintiffs,              )
                                     )
v.                                   )        No.:   3:24-CV-125-TAV-JEM
                                     )
DEPARTMENT OF ENERGY, *et al.*,      )
                                     )
            Defendants.              )

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on defendants' motion to dismiss [Doc. 33]. Plaintiffs have responded [Doc. 39], and defendants have replied [Doc. 40]. For the reasons explained below, defendants' motion to dismiss [Doc. 33] will be **GRANTED**, and this case will be **DISMISSED**.

## I.    Background

This action arises from a dispute regarding plaintiff's[1] employment with the United States Department of Energy ("DOE") [*See* Doc. 34]. Plaintiff, who is over 40 years old, serves as a Training Specialist for the Office of Secure Transportation ("OST"), a branch of the National Nuclear Safety Administration ("NNSA") [*Id.* ¶ 11]. In this role, plaintiff trains security personnel who transport the United States's nuclear arsenal nationwide [*Id.* ¶ 13]. Plaintiff joined the OST in 2008 [*Id.* ¶ 14]. Plaintiff alleges that, during a meeting on April 12, 2022, Jonathan Cloke, who was then a Training Manager, directed profane

---

[1] As discussed *infra*, the Court finds that plaintiff Lawrence Irwin is the only proper plaintiff in this action. For ease of reference, this memorandum opinion refers to Mr. Irwin as "plaintiff," throughout.

language toward plaintiff in the presence of other employees [*Id.* ¶¶ 19–21, 27]. Specifically, plaintiff alleges that he "addressed an item of discussion in the meeting" and "made a statement of concern to the topic of conversation" [*Id.* ¶ 20]. Cloke responded, "I don't give a fuck about more work, that is your fucking job and that is what you're going to fucking do, you are a god damn 1712 and that is your fucking job!" [*Id.*]. Plaintiff responded "really?" and Cloke stated "that's your fucking job god damn it!" [*Id.*]. Plaintiff then replied "yes, sir" [*Id.*]. Plaintiff asserts that later that same day, Cloke came to plaintiff's office and told plaintiff that he "did not appreciate [plaintiff] calling [Cloke] out in front of his peers[,]" and he accused plaintiff of unprofessionalism and intimidating tactics [*Id.*].

On April 14, 2022, plaintiff wrote an informal grievance to William Simpson, who was then the Director of Eastern Command, requesting that Simpson take statements from everyone present at the meeting [*Id.* ¶¶ 16, 22, 27]. Plaintiff alleges that Simpson did not fulfill this request and blamed plaintiff for Cloke's behavior [*Id.*]. Since then, plaintiff has feared retaliation and has experienced "unwarranted criticism, sarcasm, exclu[sion] from normal work input, and being talked about in a negative manner to other supervisors" [*Id.* ¶ 23].

Subsequently, during an internal affairs investigation into allegations of harassment and a hostile working environment at OST Agent Operations Eastern Command, plaintiff agreed to be interviewed and provided a written statement via email before the interview [*Id.* ¶ 25]. Plaintiff feared retaliation if Cloke was made aware, and, in fact, Facility Security Officer Carlos Montanez did make Cloke aware, and Cloke questioned plaintiff

before his interview as to whether he had spoken to the internal affairs officer, Jeff Beck [*Id*.]. On November 7, 2022, plaintiff interviewed with Beck and Program Manager Marlene Griego, and stated that that Cloke "is a bully, intimidates employees, and [plaintiff] fears [] Cloke is aware of the interview, and as a result will target and retaliate against him" [*Id*. ¶¶ 25–26]. Despite this information, in January 2023, Simpson announced his retirement, and Cloke was installed as Acting Director for Eastern Command [*Id*. ¶ 27].

Thereafter, on January 18, 2023, plaintiff was the Officer in Charge for a live-fire training event at the Central Training Facility [*Id*. ¶¶ 29–30, 76, 87, 89]. To obtain firearms for training, couriers must check out the weapons from the armory, receive a hand-receipt, and return the weapons after training [*See id*. ¶¶ 55–56, 77, 79, 83]. On January 18, 2023, the armorer issued several training weapons, including plaintiff's rifle and pistol [*Id*. ¶¶ 42–49, 89]. At approximately 3:00 p.m., the training event concluded, and all OST personnel left sometime thereafter [*Id*. ¶¶ 30, 42–49, 58–61]. That evening, plaintiff was notified that a rifle and pistol were left at the scene [*Id*.]. Plaintiff returned and secured the weapons in a safe [*Id*. ¶¶ 61, 89]. He also reported the incident to Acting Training Manager Alan Quartararo who then notified Cloke [*Id*. ¶ 31]. Cloke notified Alycia Park with Employee Relations [*Id*. ¶ 33]. Plaintiff denies that he committed the violation at issue [*Id*. ¶ 38].

At this point in the amended complaint, the chronological order of events becomes fairly unclear. Plaintiff alleges that, on February 1, 2023, Beck appointed Security Specialist Mark Rodriguez to investigate this potential security incident [*Id*. ¶ 28]. Further,

3

plaintiff states that Rodriguez interviewed him about the incident on April 12, 2023 [*Id.* ¶52]. However, it appears that plaintiff also alleges that Quartararo, Cloke, and Park were involved in investigating this matter. Plaintiff alleges that Quartararo was "told to do Douglas Factors against Plaintiff by Mr. Cloke," although he does not explain what "Douglas Factors" means or the result of such [*Id.* ¶ 32]. Additionally, plaintiff alleges that Quartararo "received 'friction' from" Park, who told Quartararo that "it would be a waste of everyone's time if he did not change his penalty to something greater [or] it would be rejected by . . . Cloke" [*Id.* ¶ 34]. Notably, however, plaintiff does not indicate what Quartararo's proposed "penalty" was, or how it was changed.[2]

Plaintiff also submits that Quartararo was threatened that if he did not change his penalty when he "resubmitted to HR," he would be recommended to be removed as "Proposing Official" [*Id.* ¶ 35]. Subsequently, Quartararo was replaced as "Proposing Official" by Cloke [*Id.* ¶ 36]. Plaintiff states that Cloke questioned him via email about the incident, but questioned no other employees about the incident which "directly targeted Plaintiff" and "placed Plaintiff in fear" [*Id.* ¶ 37]. Plaintiff alleges that "the investigation

---

[2] Plaintiff does, later in his amended complaint, state that Cloke and Parks removed "investigatory personnel from the disciplinary matter who advised that Irin [sic] should not be disciplined for the Armory incident" [*Id.* ¶ 131]. He additionally alleges that "an investigator with the anti-harassment division was made to change his report, by individuals in the employ of the Defendant, which had indicated the Defendant acted outside the rules when it levied its discipline against the Plaintiff and the Plaintiff should not have been disciplined" [*Id.* ¶ 136]. However, it is unclear whether either of these statements refer to Quartararo or another incident.

4

was never conducted properly and [he] was disciplined for no other reason than to retaliate against him for reporting Mr. Cloke and to chill his Freedom of Speech" [*Id.* ¶ 97].[3]

In March of 2023, plaintiff sought both informal and formal mediation through multiple written grievances, to which he received no response [*Id.* ¶ 98]. Plaintiff then sought assistance from the Office of Special Counsel on or about April 1, 2023, "as a result of the due process violations of the investigation and the fear that he was being retaliated against" [*Id.* ¶ 99]. Plaintiff alleges that the Office of Special Counsel advised it could not proceed with plaintiff's claims because it had not received certain reports concerning the armory incident [*Id.* ¶ 100].

On or about June 7, 2023, plaintiff made a Freedom of Information Act ("FOIA") request for information that he believed would aid him in defending the disciplinary allegation [*Id.* ¶¶ 101, 136]. As a result, Lora Bright from the FOIA division of the DOE contacted plaintiff's counsel, and "the [d]efendant" allegedly acknowledged that "it was going to begin its research in June of 2023" [*Id.* ¶¶ 137–40]. Plaintiff represents that he never received any information concerning the FOIA request despite numerous requests for updates [*Id.* ¶¶ 101, 141–42]. As of the filing of the amended complaint, plaintiff had "not received one document from his FOIA request" [*Id.* ¶¶ 102, 141].

---

[3] Plaintiff does not specifically allege what discipline he received because of the purported security incident from the firing range. Later in his amended complaint, plaintiff states that he was suspended without pay for 14 days and his ability to appeal to the United States Merit System Protection Board was blocked [*Id.* ¶ 119]. However, plaintiff never specifically alleges that this discipline was tied to the security incident described above.

5

Additionally, plaintiff maintains that Park conspired with Cloke when plaintiff raised concerns related to "workplace violence[,]" yet Cloke remains plaintiff's supervisor to date [*Id.* ¶¶ 104, 108]. Ultimately, plaintiff alleges that this matter "was reported to [the Equal Employment Opportunity Commission ("EEOC")] through a pre-suit investigation[,]" and "the EEO[C] did nothing" in response, causing plaintiff to fear continued workplace harassment [*Id.* ¶ 107]. Defendants maintain that plaintiff never filed an EEOC complaint for age discrimination [*See* Doc. 34, p. 12].

Due to defendants' conduct, plaintiff alleges that he has suffered damages through lost wages, mental and emotional anguish, sleepless nights, fear of retaliation by Cloke, and anxiety [Doc. 32 ¶¶ 109–10]. He brings claims for intentional infliction of emotional distress ("IIED")[4] (Count I), violation of the Age Discrimination and Employment Act of 1967 ("ADEA") (Count II), retaliation for filing an EEOC Hostile Work Environment Claim (Count III), and failure of defendants to respond to plaintiff's FOIA request in violation of his due process rights (Count IV), seeking, *inter alia*, damages, an order expunging this "entire conspiratorial charade" from plaintiff's record, attorney's fees and costs, lost wages, emotional damages, and a bifurcated hearing on punitive damages.

## II.    Standard of Review

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Although this standard does not require 'detailed factual allegations,' it does

---

[4]    Count I of plaintiff's amended complaint is styled "infliction of emotional damages/punitive damages" [Doc. 32, p. 23].

6

Case 3:24-cv-00125-TAV-JEM    Document 46    Filed 03/25/26    Page 6 of 23    PageID #: 368

require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Specifically, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "merely consistent with" liability, "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Finally, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). However, the Court need not accept legal conclusions or unwarranted factual inferences as true. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). "'A legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citations omitted).

7

Further, on a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). Put differently, "[a] Rule 12(b)(6) movant 'has the burden to show that the plaintiff failed to state a claim for relief.'" *Willman v. Att'y Gen. of U.S.*, 972 F.3d 819, 822 (6th Cir. 2020) (quoting *Coley v. Lucas Cnty.*, 799 F.3d 530, 537 (6th Cir. 2015)). "The movant's burden . . . is a burden of explanation; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim." *Metro. Gov't of Nashville & Davidson Cnty. v. Fed. Emergency Mgmt. Agency*, No. 3:22-CV-540, 2024 WL 1337189, at *3 (M.D. Tenn. Mar. 28, 2024).

### III. Analysis

#### A. Matters Outside the Pleadings

In support of the motion to dismiss, defendants filed two exhibits: (1) the "EEOC Pre-Complaint Intake Form" [Doc. 34-1]; and (2) "Notice of Final Interview with EEOC Counselor" [Doc. 34-2]. Plaintiff responded in opposition, attaching nearly 105 pages of exhibits in support [Doc. 39, pp. 15–120]. Defendants attached NNSA's "FOIA Response Letter" dated June 3, 2025, to their reply [Doc. 40-1].

As an initial matter, the Court must first determine whether it may consider the parties' exhibits without converting the motion to dismiss into a summary judgment motion [*See* Docs. 34-1, 34-2; Doc. 39, pp. 15–120; Doc. 40-1]. Generally, courts may consider only the factual allegations in the pleadings when deciding a Rule 12(b)(6) motion to

8

dismiss. *Tebault v. United States*, 778 F. Supp. 3d 912, 917 (W.D. Ky. 2025) (citing *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020)). However, the Sixth Circuit has held that "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss *so long as they are referred to in the Complaint and are central to the claims contained therein*." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (emphasis added).

Furthermore, courts within the Sixth Circuit have considered EEOC documents attached to a defendant's motion to dismiss without converting the matter into one of summary judgment. *See Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 862–63 (N.D. Ohio 2013) (considering EEOC documents attached to a motion to dismiss without converting the motion into one for summary judgment); *Young v. Dep't of the Treasury*, No. 2:19-CV-2384, 2020 WL 3980796, at *7 (W.D. Tenn. Apr. 9, 2020) (considering EEOC counseling documents, formal complaints, and agency decisions attached to the defendant's motion to dismiss without converting the motion to dismiss into a motion for summary judgment). Ultimately, "a District Court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Barrett v. Harrington*, 130 F.3d 246, 253 (6th Cir. 1997) (citations omitted) (internal quotation marks omitted); *Batt v. United States*, 976 F. Supp. 1095, 1096–97 (N.D. Ohio 1997) ("The decision to exclude material outside the pleadings is entirely within the discretion of the trial court.").

9

In this case, the Court finds it appropriate to consider the EEOC Pre-Complaint Intake Form and Notice of Final Interview with EEOC Counselor without converting the matter into one for summary judgment [Docs. 34-1, 34-2]. In the amended complaint, plaintiff repeatedly alleges that he submitted a claim to the EEOC, but he did not attach the EEOC Pre-Complaint Intake Form or Notice of Final Interview with EEOC Counselor [Doc. 32 ¶¶ 107, 125, 131].[5] The Court finds that both exhibits are central to plaintiff's discrimination and retaliation claims because a plaintiff must file a charge of discrimination with the EEOC before initiating a lawsuit under the ADEA. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001) ("Plaintiffs must typically file a timely discrimination charge with the EEOC in order to bring a Title VII lawsuit."). Additionally, plaintiff's retaliation claim is based on his alleged decision to report the discrimination to the EEOC [*See id.* ¶ 131]. Plaintiff did not challenge the authenticity of either exhibit attached to defendants' motion to dismiss [*See* Doc. 39]. Thus, the Court will consider the EEOC Pre-Complaint Intake Form and Notice of Final Interview with EEOC Counselor without converting the matter into one for summary judgment [*See* Docs. 34-1, 34-2].

---

[5] Specifically, plaintiff alleges that he reported the matter to the EEOC through a "pre-suit investigation" [*Id.* ¶ 107]. Plaintiff also states that defendants "did everything in their power to subvert [plaintiff's] right to report this age-based discriminatory scheme *when he submitted the age discrimination to the EEO*[*C*] within 45 days of the tortious conduct . . . ." [*Id.* ¶ 125 (emphasis added)]. Plaintiff further alleges that the "EEO[C] shelved [plaintiff's] claims to allow age discrimination to continue" [*Id.*]. Moreover, he asserts that, "[a]fter reporting the discrimination to the EEO[C,] the [d]efendants took retaliatory and disparate disciplinary action against [plaintiff] *for filing his EEO*[*C*] *claim* . . . through Clokes' and Parks' [sic] removing investigatory personnel from the disciplinary matter who advised that [plaintiff] should not be disciplined for the Armory incident" [*Id.* ¶ 131 (emphasis added)].

However, the Court will exercise its discretion to exclude the remainder of the exhibits provided by the parties. *See McKee Foods Corp. v. Pitney Bowes, Inc.*, No. 1:06-CV-80, 2007 WL 896153, at *1 (E.D. Tenn. Mar. 22, 2007) (excluding materials that were outside of the pleadings in deciding a Rule 12(b)(6) motion, in part because defendants opted to proceed under Rule 12(b)(6)). Here, "[t]he Court will give effect to [d]efendants' decision to move under Rule 12(b)(6)," and it will not convert the motion into one for summary judgment under Rule 56. *Id.*

## B. Count I: Intentional Infliction of Emotional Distress

Turning to the merits of the motion to dismiss, defendants contend that Count I of the amended complaint must be dismissed because that the United States is the only proper defendant in an FTCA action [Doc. 34, p. 8]. Further, defendants maintain that plaintiff's claim is preempted by the ADEA because it is not based on a violation of a distinct and independent right [*Id.* at 8–9].[6]

Plaintiff responds in opposition, arguing the FTCA provides a limited waiver of the United States's sovereign immunity for tort claims, including IIED [Doc. 39, p. 8]. Plaintiff also responds that the amended complaint has sufficiently stated a claim for IIED because Cloke retaliated against plaintiff, destroyed and altered evidence, and coerced subordinates to falsify reports [*Id.* at 8–9].

It is well-established that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . ." *Ellison v. United States*, 531 F.3d 359, 361 (6th Cir.

---

[6] The Court need not address defendants' alternative grounds for dismissal of plaintiff's IIED claim since the current grounds are dispositive of the matter.

11

2008) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *Reed v. Reno*, 146 F.3d 392, 398 (6th Cir. 1998) (citation omitted) ("The United States can be sued only 'when it has expressly given its consent to be sued.'").  One such express waiver is contained in the FTCA, which "provides a limited waiver of the national government's immunity from suit for torts committed by federal employees and places several conditions on the waiver." *Ellison*, 531 F.3d at 361.  Further, "the remedy provided by the FTCA (a lawsuit against the United States) is 'exclusive,' which means that, in such cases, 'the federal agency cannot be sued 'in its own name[.]'" *Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 435 (6th Cir. 2006) (quoting *FDIC v. Meyer*, 510 U.S. 471, 476 (1994)); *see also Good v. Ohio Edison Co.*, 149 F.3d 413, 417 (6th Cir. 1998) ("The general rule is that a federal administrative agency cannot be sued in its own name unless such suits are specifically authorized by Congress[.]"); *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988) (citation omitted) ("[A]n FTCA claim against a federal agency or employee as opposed to the United States itself must be dismissed for want of jurisdiction.").

Applying these principles, any suit under the FTCA against DOE, NNSA, OST, or the EEOC is improper [*See* Doc. 32].  To the extent that the amended complaint alleges an IIED claim under the FTCA against Cloke, plaintiff's claim is preempted by the ADEA because he has not alleged personal harm or injury distinct from his ADEA claim.  *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006) (dismissing a plaintiff's age discrimination claim as preempted by the ADEA); *Powers v. United States*, No. 16-CV-13668, 2019 WL 1424331, at *3 (E.D. Mich. Mar. 29, 2019) (adopting a magistrate judge's recommendation

12

to dismiss a plaintiff's IIED claim as preempted by the ADEA).  Specifically, plaintiff alleges that he suffered "mental and emotional anguish" because he reported "workplace harassment and retaliation" [Doc. 32 ¶¶ 111–16].  Therefore, plaintiff's IIED claim is not independent from his discrimination and retaliation claims [*Id.*].[7]  Accordingly, Count I of the amended complaint is **DISMISSED**.

### C.    Counts II & III: ADEA Age Discrimination and Retaliation Claims[8]

Defendants also move to dismiss Counts II and III of the amended complaint as untimely, arguing that plaintiff has failed to exhaust administrative remedies for his ADEA claims [Doc. 34, pp. 10–12].  Regarding plaintiff's age discrimination claim, defendants contend that plaintiff first raised this claim in the amended complaint on March 28, 2025 [*Id.* at 11].  As such, defendants maintain that plaintiff failed to inform the EEOC of the claim when he sought counseling on February 2, 2024, or when plaintiff sent the pre-complaint intake form to the EEOC on February 7, 2024 [*Id.*].  Moreover, defendants submit that the alleged discrimination and retaliation occurred in approximately April 2023, more than 10 months before plaintiff sought EEOC counseling [*Id.*].

---

[7]  Any IIED claim asserted by plaintiff's wife or children also fails for the same reason. Further, the amended complaint contains no allegations that defendants' conduct was directed toward plaintiff's wife or children—or that they were even present during the alleged discrimination and retaliation [*See* Doc. 32].

[8] There are no derivative claims available to plaintiff's wife and children under the ADEA. *Comm'r v. Schleier*, 515 U.S. 323, 336 (1995) ("[T]he ADEA provides no compensation for any of the other traditional harms associated with personal injury.") (internal quotation marks omitted); *Kulling v. Grinders for Indus., Inc.*, 115 F. Supp. 2d 828, 843 (E.D. Mich. 2000) (holding that loss of consortium damages are not available under the ADEA).

Turning to plaintiff's retaliation claim, defendants argue that although the amended complaint's heading mentions an "EEO Hostile Work Environment Claim," the factual allegations state that plaintiff faced discrimination for *reporting discrimination to the EEOC* [Doc. 34, p. 12]. Defendants point out that plaintiff never filed an EEOC age discrimination claim; instead, plaintiff's EEOC Pre-Complaint Intake states that he faced reprisal for reporting workplace harassment [*Id.*]. Further, defendants contend that plaintiff's EEOC Pre-Complaint Intake Form and the attached exhibits omit any mention of age, and the box next to "AGE" on the form is blank [*Id.*]. In sum, defendants submit that plaintiff has failed to state a claim for age discrimination or retaliation under the ADEA because plaintiff did not timely file an age discrimination claim with the EEOC or alert the EEOC to the alleged age-based discrimination [*Id.*].

Plaintiff responds by asserting that his due process rights were violated during a three-tiered system for disciplinary actions with a proposed suspension of 14 days or less [Doc. 39, p. 9]. In particular, plaintiff submits that his rights were violated at the first tier, during which an official reviews information, proposes certain charges or rule violations, and suggests a penalty [*Id.* at 9–10]. He contends that he was not permitted to review the proposed changes and penalty or reply in writing and orally to the official [*Id.*]. Plaintiff maintains that the evidence submitted was false and adulterated, contradicting the official's responsibility to make neutral decisions [*Id.*].

Defendants reply that plaintiff is attempting to allege a violation of a prohibited personnel practice and appeal the outcome of any Office of Special Counsel investigation, which is a matter for the Merit Systems Protection Board ("MSPB") [Doc. 40, p. 3].

14

Defendants also submit that any decision reached by the MSPB is appealable to the United States Court of Appeals for the Federal Circuit, not this Court [*Id.*].

"The ADEA prohibits an employer from discriminating against an employee over the age of [40] because of the employee's age." *House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 463 (6th Cir. 2015) (citing 29 U.S.C. §§ 623(a), 631(a)). Federal employees alleging employment discrimination under Title VII must timely exhaust administrative remedies before filing an action in the district court. *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991); *Hoover v. Timken Co.*, 30 F. App'x 511, 513 (6th Cir. 2002) ("Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of an . . . ADEA action.").

"[T]he ADEA provides two alternative routes for pursuing a claim of age discrimination." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 993 (6th Cir. 2009) (quoting *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5 (1991)). First, "[a] federal employee may invoke the EEOC's administrative process set forth in 29 C.F.R. § 1614 by seeking EEOC counseling within 45 days, filing an EEOC administrative complaint with the employing agency, and complying with the remaining steps of the administrative process." *Id.* (citing *Burzynski v. Cohen*, 264 F.3d 611, 617 (6th Cir. 2001)). Specifically, "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1)). "Failure to timely seek EEO[C] counseling is grounds for dismissal of the discrimination claims." *Hunter*, 565 F.3d at 993; *see also Horton v. Potter*, 369 F.3d 906, 910 (6th Cir. 2004) (citation omitted) ("Timely

15

contact with an EEO counselor is an administrative remedy that a federal employee must invoke before he may bring a claim of employment discrimination in [a] federal district court.").

"Alternatively, a federal employee may directly sue in federal district court *so long as the employee gives the EEOC notice of an intent to sue within 180 days of the allegedly discriminatory act* and then waits 30 days before filing the action." *Hunter*, 565 F.3d at 993 (citations omitted) (emphasis added).

Here, the Court finds that plaintiff has not satisfied either method for pursuing an ADEA age-discrimination claim. According to the amended complaint, the alleged age-based discrimination and retaliation occurred sometime after the armory incident on January 18, 2023, and before June 7, 2023, when plaintiff made a FOIA request for information that he believed would aid him in defending the disciplinary allegation [*See* Doc. 32 ¶¶ 51, 101, 119, 136]. Plaintiff sought informal EEOC counseling on February 2, 2024, and he sent the EEOC Pre-Complaint Intake Form on February 7, 2024 [Docs. 34-1, 34-2].[9] Thus, plaintiff did not "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory[,]" making dismissal of his age discrimination claim appropriate. *See* 29 C.F.R. § 1614.105(a)(1)); *see also Hunter*, 565 F.3d at 993 ("Failure to timely seek EEO[C] counseling is grounds for dismissal of the discrimination claims.").

---

[9] The EEOC Pre-Complaint Intake Form states that it was "received via email on 2/7/2024" [Doc. 34-1].

Moreover, plaintiff has not alleged that he provided the EEOC "notice of intent to sue within 180 days of the allegedly discriminatory act[,]" and defendants maintain that no such notice was provided [*See* Doc. 32; Doc. 24, p. 11].[10] *Hunter*, 565 F.3d at 993. Therefore, plaintiff has not satisfied either method for pursuing an ADEA age-based discrimination claim.

Plaintiff's retaliation claim also fails because the underlying EEOC documentation omits any mention of age [*See* Doc. 34-1]. Although the amended complaint alleges retaliation for filing an EEOC claim, the Pre-Complaint Intake Form does not mention age discrimination, and the box next to "AGE" on the form is blank [*Id.*]. An EEOC charge is a prerequisite to filing an age discrimination claim in federal court. *See Spengler v. Worthington Cylinder*, 615 F.3d 481, 489 (6th Cir. 2010). Without such a filing, plaintiff has not exhausted his administrative remedies, and he has thereby failed to state a claim for retaliation.[11] Accordingly, Counts II and III of the amended complaint are **DISMISSED**.

---

[10] To clarify, plaintiff alleges that he "submitted the age discrimination [claim] to the EEO[C] within 45 days of the tortious conduct[,]" but he has not alleged that he provided the EEOC with "notice of intent to sue" [Doc. 32 ¶ 125].

[11] Additionally, plaintiff cannot "avoid the time bar by characterizing his claims as alleging a discriminatory pattern and practice at his workplace." *Hunter*, 565 F.3d at 994. To show a longstanding policy of discrimination, the preponderance of the evidence must show "that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (citations omitted). Here, plaintiff asserts in a conclusory manner that he faced "[c]onstant and ongoing harassment and retaliation by senior officials" [Doc. 34-1, p. 2]. However, he does not identify any pattern of discriminatory decision-making against a class of employees or clarify when the alleged ongoing harassment occurred or what it involved [*See id.*].

### D. Count IV: FOIA Request and Due Process Violation[12]

Lastly, defendants move to dismiss Count IV of the amended complaint on the grounds that: (1) plaintiff is not entitled to the production of records in response to his FOIA request; and (2) plaintiff should not be awarded costs and attorney's fees for defendants' alleged failure to comply with FOIA [Doc. 34, pp. 13–14].

### 1. Failure to Respond to FOIA Request

Turning first to plaintiff's FOIA claim, defendants argue that it is governed exclusively by 5 U.S.C. § 552, *et seq*. [*Id.* at 13]. Defendants contend that an agency's failure to comply with the 20-day determination time frame outlined in 5 U.S.C. § 552(a)(6)(A) does not entitle a party to actual production of records [*Id.*]. Rather, defendants maintain that the penalty for an agency's failure to comply with the 20-day determination requirement is that an agency can be sued in a district court [*Id.*]. As a result, defendants argue that plaintiff has already availed himself of the benefit of the agency's failure to comply by filing the instant action [*Id.*]. Lastly, defendants note that a failure to comply strictly with the statutory deadlines does not mean that the agency will never respond [*Id.*].

Plaintiff responds that his due process rights were violated during the disciplinary hearing, and he was denied documents needed to defend himself during the disciplinary

---

[12] Although the amended complaint names plaintiff's wife and children as plaintiffs, there are no derivative claims available them under FOIA, which permits a district court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld *from the complainant*" [*See* Doc. 32]. 5 U.S.C. § 552(a)(4)(B) (emphasis added).

process [Doc. 39, p. 11]. Plaintiff also submits that he filed a FOIA request on April 23, 2023, and on June 7, 2023, Bright with the FOIA division contacted plaintiff's counsel [*Id.*]. According to plaintiff, an agreement was reached, and "the request was complete on June 16, 2023" [*Id.*]. Plaintiff asserts that since there has been no contact since that date, the agency's failure to respond within 20 working days triggered § 522(a)(6)(C)(i) [*Id.*].

In reply, defendants highlight that plaintiff's FOIA request is extensive, requiring numerous search terms and document types, and defendants have not refused to produce the documents [Doc. 40, p. 4].

FOIA requires a plaintiff to exhaust administrative remedies before seeking judicial review. *See Auto All. Int'l, Inc. v. U.S. Customs Serv.*, 155 F. App'x 226, 228 (6th Cir. 2005). "The exhaustion requirement is satisfied when either: (1) the individual submits a FOIA request and administratively appeals any adverse determinations, or (2) the agency fails to respond to a FOIA request within the time limits articulated in the Act [i.e. constructive exhaustion]." *Kinman v. United States*, No. 1:16-CV-329, 2016 WL 7165986, at *3 (S.D. Ohio Dec. 7, 2016) (citation omitted). Generally, FOIA requires agencies to make a determination within 20 working days of receiving the FOIA request. 5 U.S.C. § 552 (a)(6)(A)(i).

"[W]hen an agency does not adhere to FOIA's explicit timelines to make a determination, the penalty is that the agency cannot rely on FOIA's administrative exhaustion requirement to keep cases from getting into court." *S. Env't L. v. Tenn. Valley Auth.*, 774 F. Supp. 3d 945, 953 (E.D. Tenn. 2025) (citation omitted) (internal quotation marks omitted). "'[T]he impact of blowing' FOIA's 'deadline relate[s] *only to the*

19

*requester's ability to get into court.'"* *Id.* (quoting *Elec. Privacy Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 41 (D.D.C. 2014)) (emphasis in original); *see also Conley v. U.S. Immigr. & Customs Enf't*, No. 3:23-CV-128, 2024 WL 4254330, at *5 (E.D. Tenn. Sept. 20, 2024) (noting that other than the plaintiff's ability to constructively exhaust, 5 U.S.C. § 552(a)(6)(A) "does not provide for further remedies" for an agency's failure to comply with FOIA's determination deadline).

Here, plaintiff has already taken advantage of the agency's failure to comply with the 20-day timeframe allotted under FOIA by filing the instant action. *See* 5 U.S.C. § 552(a)(6)(A). Since there is no further procedural relief available to plaintiff, Count IV is **DISMISSED.**

### 2. Attorney's Fees and Litigation Costs

Regarding attorney's costs and fees, defendants assert that they have never refused to provide information to plaintiff or invoked any FOIA exemptions [Doc. 34, p. 14]. Defendants maintain that routine administrative inertia or unavoidable delay in identifying and assembling the request could be the reason for the delay [*Id.*].

Respectfully, much of plaintiff's response is difficult to follow [*See* Doc. 39, pp. 11–13]. It appears that plaintiff is attempting to argue that he is a "prevailing party" because the agency voluntarily or unliterally changed its position [*Id.* at 12]. Plaintiff asserts that the United States received the FOIA request on June 16, 2023, "with knowledge it was requested to defend [plaintiff's] retaliatory attack at him in his federal workplace" [*Id.* at 13]. Plaintiff submits that the agency responded on June 3, 2025, "only due to the

20

fact that the United States's dispositive motion had been filed" [*Id.*].  Further, plaintiff

avers that he still does not have the records he sought [*Id.*].

In reply, defendants submit that plaintiff is not entitled to attorney's fees because he

is not a "prevailing party" [Doc. 40, p. 3].  Specifically, defendants argue that plaintiff has

not shown that he has obtained relief through a judicial order or a written enforceable

agreement, and the agency has never unilaterally changed its position with respect to the

production of documents responsive to plaintiff's FOIA request [*Id.* at 4–5].  Defendants

note that plaintiff's FOIA request is extensive, involves a significant number of key terms

and document types, and requires that the production be released every two weeks [*Id.*].

Further, defendants represent that the FOIA office has not refused to produce the requested

information [*Id.* at 5].

FOIA provides, in pertinent part, that, "[t]he court may assess against the United

States reasonable attorney fees and other litigation costs reasonably incurred in any case

under this section in which the complainant has substantially prevailed."  5 U.S.C.

§ 552(a)(4)(E)(i).  To determine whether fees and costs should be granted under this

provision, courts apply a two-part test.  *GMRI, Inc. v. EEOC*, 149 F.3d 449, 451 (6th Cir.

1998).  Courts must first "decide whether the plaintiff 'substantially prevailed' and is thus

eligible for such an award."  *Id.* (citing *Maynard v. CIA*, 986 F.2d 547, 568 (1st Cir. 1993)).

The complainant has "substantially prevailed if [he] has obtained relief through either--(I)

a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary

or unilateral change in position by the agency, if the complainant's claim is not

insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).  Under the second theory, known as the

21

"catalyst theory," a plaintiff is a "prevailing party" if he "achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon Bd. and Care Home, Inc., v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 601 (2001).

In other words, the question is whether "prosecution of the action could reasonably be regarded as necessary to obtain the information and [whether] the action had a substantive causative effect on the delivery of the information." *Batton v. IRS*, 718 F.3d 522, 525 (5th Cir. 2013); *see also GMRI, Inc.*, 149 F.3d at 451–52 (finding that, even if a FOIA plaintiff "did not obtain a court order compelling the agency to produce requested documents, it still will have substantially prevailed if it demonstrates that the prosecution of the lawsuit was reasonably necessary to obtain requested information, and that the existence of the lawsuit had a causative effect upon the release of that information").

After a careful review of the parties' arguments, the Court finds that plaintiff has not "substantially prevailed" under § 552(a)(4)(E)(ii) and is thus ineligible for attorney's fees and litigation costs. Specifically, plaintiff has not alleged that he has obtained relief through either a judicial order, an enforceable written agreement, or a consent decree. *See id.* However, it appears that plaintiff is arguing he is a prevailing party due to "a voluntary or unilateral change in position by the agency" [*See* Doc. 39, p. 12].

Plaintiff asserts that he substantially prevailed on his FOIA claim because the agency responded "only due to the fact that the United States's dispositive motion had been filed" [*Id.* at 13]. Yet, plaintiff has not provided any support for his argument that the filing

of the dispositive motion catalyzed the agency's response to the FOIA request [*See id.*].

Accordingly, plaintiff's request for attorneys' fees is **DENIED.**[13]

## IV.  Conclusion

For the reasons above, defendants' motion to dismiss [Doc. 33] is **GRANTED**, and this case will be **DISMISSED**.  A separate order will follow.

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

---

[13]  Even if the Court considered other exhibits submitted by the parties, the outcome would remain the same.  Specifically, NNSA's FOIA response letter demonstrates that plaintiff's FOIA request is substantial as plaintiff requested "[a]ll final talking points, decision memoranda, internal assessments, or email [c]ommunications, as well as recorded audio, memorializing final decisions, containing any of the following key terms . . . ." and then listed 28 search terms with multiple connectors [Doc. 39, p. 16; Doc. 40-1].  It follows that the agency's response likely was not due to a "unilateral change in position" but rather it was the result of the agency processing plaintiff's voluminous request [*Id.*].